The People of the State of New York, Respondent, *v.* John F. Lillis, Appellant.

Fourth Department, December 20, 1956.

*Paul R. Shanahan* for appellant.

*Arthur W. Wilson, District Attorney (Jacob L. Serling* of counsel), for respondent.

WILLIAMS, J.  Defendant was indicted by the Grand Jury of Onondaga County for perjury in the second degree, a misdemeanor.  A trial before the County Court resulted in a judgment of conviction, from which defendant appeals.

It is unnecessary to report the evidence in detail, for in our view the case presents only a question of law which is fatal to the indictment.  Briefly, the People proved that on December 29, 1954, the defendant gave to one Bowers, an investigator for the State Liquor Authority, a statement in which he stated that on various occasions he had purchased liquor on credit from a certain licensee and had observed minors served alcoholic beverages on the licensed premises.  Bowers, who was neither a notary public nor a commissioner of deeds, took the statement and then had defendant sign and swear to it.  Thereafter, a hearing was had before a deputy commissioner of the State Liquor Authority in connection with a proceeding for the revocation of the liquor license in question.  Defendant was placed under oath and proceeded to give testimony in which he repudiated his former statement and admitted it was a lie.

Based upon the above, the Grand Jury returned an indictment which merely sets forth the making of the statement and the giving of the testimony, alleges that the two were contradictory as the defendant well knew, and charges that he did willfully and corruptly commit the crime of perjury in the second degree.  The indictment rests entirely upon the contradiction.  There is no allegation, nor did the People prove, which version was true and which false.  The authority for such an indictment is said to be section 1627-a of the Penal Law, which reads as follows: '' An indictment or information for perjury in the second degree may allege the making of contradictory testimony or statements under oath *on occasions in which an oath is required by law,*

without specification of which thereof is true; and the perjury may be established by proof of the wilful giving or making of such contradictory testimony or statements, without proof as to which thereof is true." (Italics added.) Section 1627-a was enacted in 1936. Clearly it is a departure from the fundamental rule of criminal pleading that crimes shall not be alleged in the alternative (Code Crim. Pro., § 278). At English common law an indictment was fatally defective if it alleged no more than the willful giving of contradictory testimony upon different occasions. (*Rex* v. *Harris*, 5 B. & A. 926.) The rule protected the accused by requiring that he be directly and clearly informed of the perjury with which he was charged, so that he would not be obliged to defend alternative charges and possibly be convicted although neither was proved beyond a reasonable doubt. Section 1627-a is, therefore, something of an innovation in the law of perjury. Legislative recognition of the dangers inherent in the " contradictory statements " technique appears in two ways: (1) Its use is limited to cases of perjury in the second degree. No conviction for first degree perjury, a felony, could be obtained in that fashion, although if one of the statements were distinctly alleged to be false, its falsity could be presumptively established by proof of the other, inconsistent statement (Penal Law, § 1627). That is not the case before us at all. (2) Section 1627-a is expressly limited to " occasions in which an oath is required by law ". That seems to exclude even some cases of second degree perjury, for in the general definition of perjury (§ 1620) we find the language, " any occasion in which an oath is required by law or is necessary for the prosecution or defense of a private right or for the ends of public justice or may lawfully be administered ". And in section 1620-a, defining perjury in the first degree, the expression is, " an occasion in which an oath or affirmation is required or may lawfully be administered." Second degree prejury is defined by reference to the general definition and by exclusion of the higher degree (§ 1620-b). Thus, a conviction for second degree perjury may ordinarily be obtained where an oath was lawfully administered although it was not required by law. But when we turn to section 1627-a, we find that the method of indictment and of proof which it authorizes may be employed only where the contradictory testimony or statements were made " on occasions in which an oath is required by law ". These sections of the Penal Law are *in pari materia,* and substantial differences of language should not be dismissed as meaningless. As we read section 1627-a, the People are excused from alleging and proving

which statement was false, but they must establish a willful contradiction and must show that on each occasion in which an oath was administered it was required by law. Thus, the section would apply where testimony given before the grand jury was repudiated on the trial, but it would not apply where a party verified a pleading in a case not required by law and then testified on the trial contrary to the allegations of the pleading. So construed, section 1627-a, which as we have said, embodies a novel principle unknown to the general body of our law, is limited to those cases in which an oath is not only authorized or permitted but actually required by law — occasions of such solemnity and gravity that the law demands the administration of an oath as the price of legal recognition of the act.

The question, then, is whether an oath was required by law when defendant swore to the statement of December 29, and we are fully convinced that there was no such requirement. The execution and form of such statements are not regulated by law, nor is the legal effect thereof altered by the presence or absence of an oath. In a court of law such a statement would be hearsay and inadmissible in evidence whether it was given under oath or not. And since the statement was subscribed, it could have been used to impeach the witness even if it had not been made under oath (Civ. Prac. Act, § 343-a). Therefore, the oath added nothing to the legal effect of the statement. The law would accord it the same limited recognition whether it was verified or not. Other documents are treated differently by the Alcoholic Beverage Control Law. Thus, a petition for a local option election in cities must contain a statement that the signatures are genuine, and "Such statement shall be sworn to before an officer authorized to administer oaths within such city." (§ 142.) In the absence of such a verification, we may assume that the petition would be a nullity; its legal validity depends upon the oath. Similarly, an application for a liquor license must contain certain information, which "shall be given under oath" (§ 110; see, also, §§ 51–55, 61–62, 76). If there is no oath, then there is in legal effect no application. But no provision of the Alcoholic Beverage Control Law, or of the rules promulgated by the Authority, regulates the manner of taking such a statement as defendant gave to the investigator on December 29, and as a matter of the general law of evidence its effect would be exactly the same, neither more nor less, whether it was made under oath or not. That was not an occasion "in which an oath [was] required by law", and if our interpretation of section 1627-a is correct, that statute could not be employed in this case.

But passing the construction of section 1627-a, a serious question still remains whether Bowers was authorized to administer an oath. His authority to do so could only be derived from section 17 of the Alcoholic Beverage Control Law, which reads in part: " The authority shall have the following functions, powers and duties: * * * 10. To hold hearings, subpoena witnesses, compel their attendance, administer oaths, to examine any person under oath and in connection therewith to require the production of any books or papers relative to the inquiry. The powers provided in this subdivision may be delegated by the authority to any member or employee thereof. The provisions of the civil practice act shall, where applicable, apply to subpoenas issued pursuant to this subdivision." The authority to administer an oath, so far as granted to the State Liquor Authority by subdivision 10 of section 17, has been delegated to investigator Bowers. The question is whether the Authority itself could administer an oath except as incident to an actual hearing; whether, that is, the various powers enumerated in subdivision 10 of section 17 are granted independently of one another, or whether they should be read collectively as granting the power to hold hearings and in connection therewith to exercise the usual powers of a court of law. However, in view of our determination that the indictment must be dismissed, we merely call attention to this question without passing upon it.

We reach the conclusions that an oath was not " required by law " within the meaning of section 1627-a of the Penal Law when the statement of December 29 was taken and that the judgment should be reversed and the indictment dismissed.

All concur. Present — McCurn, P. J., Vaughan, Wheeler, Williams and Bastow, JJ.

Judgment of conviction reversed on the law and indictment dismissed.